IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF TEXAS
LUFKIN DIVISION

| IN RE: | § | |
|---|---|---|
| | § | |
| SAND HILL FOUNDATION, LLC, | § | CASE NO. 10-90209 |
| | § | |
| SAND HILL PANOLA SWD #2 LLC, | § | CASE NO. 10-90210 |
| | § | |
| SAND HILL PANOLA SWD #5, LLC, | § | CASE NO. 10-90211 |
| | § | |
| DEBTORS | § | CHAPTER 11 |
| | § | Joint Administration under #10-90209 |

## OBJECTION TO RYCAR INVESTMENTS, LLC'S, MOTION FOR RELIEF FROM AUTOMATIC STAY AGAINST PROPERTY AND WAIVER OF THIRTY (30) DAY HEARING REQUIREMENT

Bass Drilling, Inc. files this Objection to the Motion for Relief from Automatic Stay Against Property filed by Rycar Investments, LLC, and would respectfully show the Court as follows:

### I.

### SUMMARY

1. In Rycar's motion to lift the stay, it leaves out two key facts about the 5.0 acres that secures its $2 million note. First, it does not inform the court about the profitable salt water disposal well on the 5.0 acres, whose value certainly exceeds the amount owing on the note. When Sand Hill filed bankruptcy, it had received –and apparently rejected– an unsolicited $4 million offer to buy the well. In fact, based on the operating report provided to the court, the land may be worth as much as $8 million, due to profits from the salt water disposal well.

2. Second, Rycar also omits its personal connection to the debtor. Rycar is managed by Ryan Mackey, whom Larry Eaves—the primary owner and operator of the debtor—has known all his life. Larry Eaves testified he is personal friends with Ryan Mackey and his family, all of

whom are from Center, Texas, where Larry lives and works. Rycar funded the construction of the salt water disposal well with a line of credit that was originally intended to be amortized. But after Bass Drilling obtained a significant judgment against Sand Hill, Larry Eaves and Ryan Mackey did not set up the amortization schedule. Instead, Rycar scheduled a foreclosure sale. At their post-judgment depositions, Larry and Delicia Eaves could not give a reason why the schedule had not been put in place, other than he and Ryan Mackey "never got together to do it." Given the value of the well and Bass Drilling's judgment lien, the more likely answer is collusion between Larry Eaves and Ryan Mackey, to use the foreclosure sale to cut off Bass Drilling's rights.

3. Given the potential value of the well, the interests of the unsecured creditors need to be protected from Rycar's motion to lift the stay. It is Rycar's burden to prove that it is not adequately protected. Because of the potential value of the well, it cannot carry that burden.

4. Moreover, if Rycar is correct that this valuable collateral is not being protected, then the appropriate action is not to lift the stay, but to appoint a trustee in place of the debtor in possession, so the property can be protected.

## II.

## FACTUAL BACKGROUND

5. On December 16, 2009, a jury in Lufkin, Texas returned a verdict in favor of Bass Drilling against Sand Hill, for breach of contract and conversion. On February 11, 2010, Judge Thad Heartfield signed a judgment in favor of Bass Drilling. After a subsequent award of attorneys's fees, Sand Hill Foundation, LLC owes Bass Drilling $4,147,525.51, plus post-judgment

interest.[1]

6. Two of Sand Hill's most valuable assets are salt water disposal wells it began constructing in 2008 and 2009: Sand Hill Panola SWD #2 and Sand Hill Panola SWD #5. SWD #2 was constructed using a $2.5 million line of credit from Sabine State Bank.[2] On December 18, 2009—after construction was complete—the loan was amortized over 39 months.[3] Notably, the Sabine Bank refinancing took place a mere two days after the jury returned its verdict in the Bass Drilling case, where Larry had been tied up for almost two weeks.

7. By contrast, once Bass Drilling obtained its judgment, Larry Eaves never arranged to amortize the construction loan from Rycar. SWD #5 was constructed with $2 million from Rycar.[4] Rycar is managed by Ryan Mackey, whom Larry Eaves has known all his life.[5] Although the loan was not amortized, it was originally intended that it would be.[6] In post-judgment testimony in the Bass Drilling case, Delicia Eaves could not give any reason why the note was not amortized, other than "[they] never [got] together to do it."[7] Larry Eaves testified that because the well was being repaired they had "no funds" coming in.[8] As shown by the cash flow from the salt water disposal wells (see below), this was and is patently untrue.

---

[1] Exhibit A.

[2] On July 18, 2008, Sand Hill executed a loan with Sabine State Bank for $2,500,000. Exhibit B.

[3] Exhibit C.

[4] On May 22, 2009, Sand Hill executed a loan with Rycar Investments for $2 million. Exhibit D.

[5] Exhibit E, Deposition of Larry Eaves at 8:13-25.

[6] Exhibit E at 9:10-15.

[7] Exhibit F, Deposition of Delicia Eaves at 25:11-14.

[8] Exhibit E at 9:10-25.

8. When Bass Drilling began efforts to collect its judgment, it learned that the salt water disposal wells had significant value. Unofficial estimates from potential buyers ranged from $7 to 10 million dollars for both wells. One potential purchaser was Select Energy, a $600 million oil service and supply company based in Gainesville, Texas.[9] According to Select Energy, it purchases salt water disposal wells, typically paying between 3 and 4 times cash flow, measured as EBITDA (earnings before interest, taxes, depreciation, and amortization).

9. Sand Hill provided Judge Heartfield with financial information on its wells. But Delicia Eaves testified that "[Sand Hill's] books are a disaster. The CPA that's fixing to look at it is fixing to see it's a joke. My books are horrible."[10] Further, the financial information provided by Sand Hill was affected by the time period the wells were being repaired and not producing.[11]

10. In October to December of 2009 SWD #5 had net profits of approximately $468,837.60, which is approximately $1.8 million for the year.[12] Using Select Energy's valuation method, the well was worth about $5.6 million to $7.5 million. Then in January through April of 2010 SWD #5 had a net profit of approximately $188,101.66, which amounts to approximately $564,304.98 for the year and a value of $1.7 million to $2.3 million.[13] Larry Eaves testified the well

---

[9] Select Energy Services is an oil service and supply company based in Gainesville, TX with operations in the Barnett, Haynesville, Fayetteville, Woodford, Eagle Ford and Marcellus shale formations. Through its subsidiary it provides water transfer & hauling services, dirt & pipeline construction services, accommodations & rentals, rig moving and other heavy haul logistical services and also operates 17 supply stores under the name of Bell Supply. The company has annual revenues in excess of $600 million. On, May 12, 2010, its parent company SES Holdings, LLC announced that it had received a $125 million investment from Crestview Partners, a New York based private equity firm. See www.selectenergyservices.com.

[10] Exhibit F at 47:21-23.

[11] Exhibit E at 9:17:25; 10:1-8.

[12] Exhibit G.

[13] Exhibit H.

was shut down for repair work during the first part of 2010, which probably explains the reduced performance. As a result, expenses associated with SWD #5 increased and production decreased.[14]

11. On April 28, 2010, David Cook, the court appointed accountant, evaluated SWD #5.[15] Even though SWD #5 had decreased profits at the beginning of the year, Mr. Cook found that the salt water disposal wells generated enough cash flow to attract a potential buyer. He opined that the sales price could be in excess of the debt owed.

12. Immediately before Sand Hill filed bankruptcy, Select Energy made an apparently unsolicited offer to purchase SWD #5 for $4 million, and both wells for $7 million.[16] Select Energy based its offer on the admittedly inaccurate data provided by Sand Hill to Judge Heartfield. Sand Hill apparently rejected the offer, despite the pending foreclosure sale by Rycar. (Nevertheless, Sand Hill valued the wells at exactly $7 million when it filed bankruptcy.)

13. On May 13, 2010, Bass Drilling filed a motion to obtain a turnover order for the interests of Sand Hill and the two salt water disposal wells. The hearing was scheduled for May 26, 2010. The night before the hearing, Sand Hill filed for bankruptcy, preventing Judge Heartfield from granting the turnover order.

14. Once Sand Hill was in bankruptcy, it began filing operating reports for the wells. These reports confirmed the value of the wells, especially the well on which Rycar has a lien. According to the June Operating Statements filed for SWD #5, its cash flow (EBITDA) for the

---

[14] Exhibit E at 9:16-25;10:1-2; 21:2-7.

[15] Exhibit I. Mr. Cook noted in his report that Sand Hill's books were "very basic, unadjusted accounting documents that [were] not a sufficient basis on which [he] can render [his] opinion."

[16] Exhibit J.

month of June totaled $164,057.46.[17] These profits are consistent with the profits for the last three months of 2009, before the well was taken down for repairs. At that rate, SWD #5 would produce annual profits of $1,968,689.50, suggesting a value of approximately $5.9 million to $7.9 million (at 3 to 4 times EBITDA).

## III.

## ARGUMENT

15. Rycar has asked this Court to lift the Automatic Stay and institute foreclosure proceedings against SWD #5. Rycar alleges that the automatic stay should be terminated because the collateral is declining in value, Sand Hill does not have proof of insurance, and there is no equity in the collateral.

16. Because of the significant equity in SWD #5, Rycar cannot meet its burden of proving that its interests are not adequately protected. The recent Operating Report—probably the most accurate financial information submitted to date—shows significant positive cash flow and suggests a high value, perhaps as high as $8 million. There is no indication the collateral is declining in value.

17. To the extent Sand Hill is failing to take appropriate actions to preserve the collateral, this Court should appoint a trustee to ensure that the collateral is protected. Lifting the stay is both unnecessary and harmful to the interests of the unsecured creditors.

---

[17] Exhibit K

18. Finally, the court should consider the close, personal connection between Rycar and the debtor. The lender is a long-time personal friend of Larry Eaves.[18] He is foreclosing on a line of credit that the parties originally contemplated would be amortized into a payment stream.[19] Neither Larry nor Delicia could give a good reason why the debt was not amortized as originally contemplated. Although there is no proof of collusion, it is an obvious possibility that would explain the actions of the debtor.

Wherefore, Bass Drilling, Inc. respectfully requests that Rycar's motion be denied in its entirety, and for any and all such other and further relief, at law or in equity, general or specific, either requested above or to which it may show itself to be justly entitled.

Respectfully submitted,

PREIS & ROY, P.L.C.

/s/ *David L. Pybus*
David L. Pybus
Texas State Bar. No. 16418900
24 Greenway Plaza, Suite 2050
Houston, Texas 77046
Phone: (713) 355-6062
Fax:   (713) 572-9129

---

[18] Exhibit B at Larry Eaves at 8:13-25.

[19] *Id.* at 9:10-15.

OF COUNSEL:

Preis & Roy, P.L.C.
William W. Fitzgerald
Texas State Bar No. 24038898
Margaret A. Lalande
Texas State Bar No. 24070099
24 Greenway Plaza, Suite 2050
Houston, Texas 77046
Phone: (713) 355-6062
Fax:    (713) 572-9129

Gary Coker
State Bar No. 04526000
Germer Gertz
P.O. Box 4915
550 Fannin, Suite 400
Beaumont, TX 77704
Tel: (409) 654-6700
Fax: (409) 835-2115

# CERTIFICATE OF SERVICE

I hereby certify that true and correct copies of the foregoing have been forwarded to the following parties by electronic means or by first-class mail:

Attorneys for Debtors
Jeffrey Wells oppel
1010 Lamar, Ste. 1420
Houston, TX 77002

U.S. Trustee
Timothy W. O'Neal
110 N. College Ave., Ste. 300
Tyler, TX 75702

Debtors:
Sand Hill Foundation, LLC
P.O. Box 1661
Center, TX 75935

Sand Hill Panola SWD #2
P.O. Box 1661
Center, TX 75935

Sand Hill Panola SWD #5
P.O. Box 1661
Center, TX 75935

Parties Requesting Notice:
Andrew Dylan Wood
P.O. Box 165001
Austin, TX 78716

Patrick Kelley
6101 S. Broadway, Ste. 500
Tyler, TX 75703

John P. Dillman
P.O. Box 3064
Houston, TX 77253

John L. Whitehead
P.O. Box 1127
Natchitoches, LA 71458

Steven C. Haley
P.O. Box 1808
Brenham, TX 77834

Scott A. Richeson
Charles E. Lauffer, Jr.
821 ESE Loop 323, Ste. 530
Tyler, TX 75701

R. Christopher Naylor
4801 Woodway, Ste. 420 W.
Houston, TX 77056

John Mayer
2 Riverway, Ste. 700
Houston, TX 77056

Peter W. Ito
Kristen Jain
Megan Adeyemo
555 Seventeenth St., Ste. 3400
Denver, CO 80202

James W. King
6420 Wellington Place
Beaumont, TX 777

Kathleen N. Reed
Navistar Financial Corp
425 N. Margingale Rd., 18th Fl.
Schaumburg, IL 60173

Jason R. Searcy
P.O. Box 3929
Longview, TX 75606

Jeffrey M. Hirsch
109 N. Post Oak Ln., Ste. 300
Houston, TX 77024

Omni Industrial Solutions, LLC
c/o Michael A. Crawford
P.O. Box 2471
Baton Rouge, LA 70821

Michael P. Ridulfo
1111 Bagby, 47th Floor
Houston, TX 77002

Michael E. Gazette
100 E. Ferguson St., Ste. 1000
Tyler, TX 75702

Howard C. Rubin
Daniel P. Callahan
2100 Ross Ave., Ste. 750
Dallas, TX 75201

And to all parties on the attached List of Creditors Holding 20 Largest Unsecured Claims.

SIGNED AND DONE this 17th day of August, 2010.

/s/ David L. Pybus
David L. Pybus